## PALMER v. STROHECKER et al.
### No. 5382.

Court of Appeals of the District of Columbia.
Argued Oct. 6, 1931.
Decided Nov. 2, 1931.

Petition for Rehearing Denied Nov. 21, 1931.

William F. Kelly and P. J. J. Nicolaides, both of Washington, D. C., for appellant.

John Paul Earnest and George B. Springston, both of Washington, D. C., for appellees.

Before MARTIN, Chief Justice, and ROBB, VAN ORSDEL, and GRONER, Associate Justices.

GRONER, Associate Justice.

Julia D. Strohecker, a resident of the city of Washington, died in January, 1930, leaving a last will executed some six months prior to her death, in which substantially her entire estate, aggregating about $15,000, was left to her daughter Sallie Strohecker, then 45 years of age and afflicted with epilepsy. At the time of testatrix' death, there were four living sons ranging in ages from 31 to 43. Two of the sons, who are the appellees, attacked the will on the ground that it had been procured by the fraud and coercion of their brother Brevard, and, after a trial before a jury, the issue thus raised was answered in the affirmative, and judgment denying probate entered on the verdict of the jury, and, from that judgment, this appeal is taken.

In the case of Beyer v. Le Fevre, 186 U. S. 114, at page 126, 22 S. Ct. 765, 46 L. Ed. 1080, the Supreme Court, speaking through Mr. Justice Brewer, announced the effective rule in the federal courts to be that the will of a person found to be possessed of sound mind and memory is not to be set aside on evidence tending to show only a possibility or suspicion of undue influence.

In the trial below, the testatrix was found to be possessed of sound mind and memory at the time of the execution of the will. It is therefore our duty to examine the record to determine if the conclusion reached below infringes the rule, and, in our endeavor in this respect, we shall not lose sight of the other rule that the facts as found by the trial court are entitled to great weight, and should

not be set aside unless the result reached is wholly unwarranted by the testimony, but, giving that rule the fullest effect, we are constrained to say that, after a painstaking examination of all the evidence, there seems to us a total absence of any on which the judgment may stand.

The grounds upon which we are asked to sustain the judgment are that for a period of substantially a year and a half before the execution of the will testatrix, who at the time of her death was 72 years of age, had declined in health and lost her taste for food; that some years prior to the execution of the will in suit she had made a will dividing her property equally among all her children; that only Brevard, of the sons, knew of the making of the new will and was present at its execution; that he was then indebted to his mother in the sum of $8,000 for money loaned him; and that some two years before the will was executed he had stated to one of the brothers, who had asked him to pay or secure the money he owed his mother, that if he did he would fix it so that none of the rest could ever get a dollar. Beyond this, there is no testimony suggesting undue influence, or indeed any part in inducing the making of provision for his sister. On the contrary, it abundantly shows, we think, the reasons moving the testatrix in preferring her daughter over her sons. The former had suffered from childhood with epilepsy, and had spent fifteen years of her life in an insane asylum in North Carolina. It was while she was in this institution that the mother made the former will dividing the property equally, but some six months before the execution of the will in question the daughter returned home, still afflicted with this dreadful disease and wholly unable to provide for herself and yet not requiring legal restraint. Nothing, it seems to us, would have appealed more to the motherly instinct than the condition of this woman. She required not only provision for her support, but likewise provision for a nurse to take care of her, and obviously this could not have been accomplished through an equal division of the estate among the five children. That this unfortunate daughter should have been provided for against conditions for which she was not responsible, nor able to meet, was, it seems to us, the most natural thing that could have happened.

The testimony of some of the persons present when the will was executed—who, it may be added, had no interest in the controversy—is to the effect that the mother had this in mind and stated it as her reason for making the will in the way in which she did. The scrivener of the will testified that she came to him alone and asked his assistance in making the will, stating to him in detail the provisions which she desired incorporated in it, that he drew these up roughly and gave them to her to consider, and that she later came back, and he prepared the will in accordance with her expressed wishes.

Not only is there lacking a particle of testimony tending to show that Brevard possessed any influence over his mother not possessed by his brothers, but there is a total lack of any evidence tending to show that he ever attempted to assert influence, much less coercion, on her in connection with the making of the will or with any other matter in which she was concerned, unless indeed it be in connection with the loans she made to him, and these were all made many years prior to her death, part of which was repaid and the balance of which of course must now be paid.

The evidence we think, taken most strongly against appellant, convincingly shows that testatrix was led by her own observation of her daughter's condition, when the latter was released from the asylum and returned to her mother's home, to reach the conclusion, uninfluenced by any one, that her plain duty in the circumstances was to provide for her daughter's future, and, with this in mind, she went, without other influence than her own will, and sought the assistance of a neighborhood friend as to the legal method to accomplish this desire. If the son sympathized with this purpose and abetted it, as to which there is no evidence, we think he should be commended.

Since, in these circumstances, we are obliged to reverse the judgment, we do not stop to notice the other assignments of error, except to say that in our opinion the introduction of Brevard's letter of date June 22, 1917, and in which he disclosed to his mother his escape from the war draft on an obvious misstatement of fact, was error. The letter was totally irrelevant to the issue, and could have had no other result than to prejudice the jury, which doubtless it did.

The judgment of the Supreme Court of the District is reversed, and the case remanded, with instructions to set aside the judgment in favor of the appellees and for further proceedings in conformity with this opinion.

Reversed.